**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE** | **Chapter 11** |
| **Juniper Specialty Products LLC, SGCE LLC** | **CASE NO. 20-33109**<br>**CASE NO. 20-33110** |
| **Debtors.** | **(Jointly Administered)** |

**APTIM MAINTENANCE, LLC'S SUPPLEMENTAL
OBJECTION TO BIDDING PROCEDURES MOTION**
[Relates to Docket Nos. 13 and 28]

The undersigned counsel, on behalf of secured creditor APTIM Maintenance, LLC ("APTIM"),[1] files this *Supplemental Objection to Bidding Procedures Motion* (this "Objection") in response to the Bidding Procedures Motion filed in the above-styled jointly administered bankruptcy cases (collectively, the "Bankruptcy Cases") by the above-captioned debtors and debtors in possession (the "Debtors").[2] APTIM respectfully states as follows:

**SUPPLEMENTAL OBJECTION**

1.      The Debtors in these Bankruptcy Cases have proposed a highly aggressive and complicated set of Bidding Procedures. As filed with this Court, the Bidding Procedures are not value maximizing and are extremely prejudicial to the rights of APTIM, the Debtors' largest secured creditor (and likely the Debtors' largest stakeholder, secured or otherwise) as well as other parties in interest. As this Court noted at the first-day hearing, that expedited process requires interested parties to move quickly and try, in good faith, to resolve issues pending in

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in *APTIM Maintenance LLC's (I) Omnibus Objection to First-Day Motions and (II) Request to Adjourn the Bidding Procedures Motion* [Docket No. 28] (the "Omnibus Objection"). The factual background and APTIM's objection to the Bidding Procedures Motion set forth in the Omnibus Objection are incorporated in their entirety by reference herein.

[2]    To the extent the Debtors seek to adjourn the July 6, 2020 hearing, APTIM also submits this Objection in opposition to any emergency motion to adjourn.

these Bankruptcy Cases on a brisk timeline.[3]  APTIM heard the Court, and it appreciates the

Debtors' liquidity constraints and how those constraints inform the Debtors' proposed sale

timeline.  But in order for due process to be preserved, and in order for the Debtors' assets to be

subjected to a marketing process that is truly value maximizing, the Debtors too must work

quickly and in good faith.  Unfortunately, as set forth below, the Debtors have, to date, failed to

do so.  The result is that they are now appear to be back before the Court seeking approval of

exactly the same Bidding Procedures that the Court declined to approve or consider at the first-

day hearing.

      2.      Following the hearing held by this Court to consider the Debtors' requested first-

day relief (including this Court's adjournment of the Bidding Procedures Motion), APTIM has

worked expeditiously to provide this Court and the Debtors with as much clarity as possible

regarding APTIM's position in these Bankruptcy Cases and to attempt to resolve the issues

raised by the Court and the Debtors at the first-day hearing. This has included, among other

things:

- Providing the Debtors with requests for discovery and attempting to meet and confer regarding depositions in connection with the Debtors' proposed Bidding Procedures;

- Drafting and transmitting to the Debtors a term sheet setting out the parameters under which APTIM would be willing to participate in the Debtors' proposed sale process;

---

[3]    Indeed, the very first question asked by this Court at the first-day hearing was how the parties were "going to deal with the sale motion in the context of needing to preserve credit bid rights." Tr. First-Day Hr'g at 4:17-19. APTIM has a statutory right to credit bid the APTIM Claim.  *See, e.g.*, 11 U.S.C. § 363(k); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 n.2 (2012) ("The ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) *without committing additional cash* to protect the loan.") (emphasis added); *Tampa Bay Assocs., Ltd. v. DRW Worthington, Ltd.* (In re Matter of Tampa Bay Assocs.), 864 F. 2d 47, 50 (5th Cir. 1989) (approvingly citing legislative history for section 1111(b), which provides that a "[s]ale of property under section 363 or under the plan is excluded from treatment under section 1111(b) *because of the secured party's right to bid in the full amount of his allowed claim at any sale of collateral under section 363(k)....*") (emphasis added).

- Drafting and filing a proof of claim, filed as claim number 1 on the Debtors' claims register; and

- Responding to a proposal by the Debtors regarding the amount of APTIM's credit bid and participation in the Debtors' sale process and offering on multiple occasions to discuss the same with the Debtors.

3.      Unfortunately, notwithstanding these efforts by APTIM, so far the Debtors and APTIM have been unable to reach an acceptable solution that complies with this Court's directive that the Bidding Procedures should protect secured parties' rights to credit bid.  Instead, the Debtors have continued to insist that, in order to participate as a bidder in the Debtors' sale process, APTIM must:

- Agree to severely limit its statutorily protected right to submit a credit bid while potentially being at risk for a cash backstop, by stipulating to a partially allowed claim for credit bidding purposes that is far below the amount reflected by the Debtors' own books and records;

- Provide cash consideration (presumably to fund the administrative expenses that the Debtors have admitted they are unable to pay) and serve as a stalking horse bidder for certain of the Debtors' assets that are not APTIM's collateral; and

- Accept the deficient Bidding Procedures as drafted and filed by the Debtors.

Perhaps even more troubling, the Debtors' proposal as submitted to APTIM on June 29 was that APTIM could credit bid *only 1/3* of the amount that the Debtors had previously proposed that APTIM could credit bid mere days before filing the Bankruptcy Cases.[4]  Moreover, the proposed claim amount is also many millions of dollars lower than (1) the amounts that the Debtors' internal books and records show is owing to APTIM, (2) the amounts reflected in documents that, upon information and belief, Jefferies provided to potential DIP financing sources with

---

[4]    APTIM remains willing to engage in negotiations over the proposed Bidding Procedures in advance of the July 6 hearing.  However, to date the Debtors have not engaged with respect to a single one of APTIM's comments to the proposed Bidding Procedures (*i.e.*, they have not provided a markup in response to APTIM's comments, nor have they agreed to incorporate any of APTIM's proposed changes to the proposed Bidding Procedures).

respect to the APTIM Claim,[5] and (3) the net amount of the APTIM Claim, even assuming every dollar of Juniper's purported counterclaim was valid (which it is not).

4.      In response to APTIM's discovery requests related to the hearing on the Bidding Procedures, the Debtors waited to produce any documents until approximately 7:30 p.m. ET on July 1, 2020.  While APTIM appreciates that Courts generally loathe hearing about discovery squabbles, what happened next was highly unusual: when the documents were made available, the Debtors attempted to condition their production on APTIM's execution of a form of non-disclosure agreement (the "Form NDA") that purports to prevent APTIM from using anything the Debtors label as "Confidential Information" in connection with contesting the Bidding Procedures Motion.  Specifically, the Debtors' proposed Form NDA would require APTIM to agree to use the produced documents "solely for the purpose of [considering] the [sale] Transaction," as opposed to using the discovery for purposes of contesting the Bidding Procedures Motion, and to "keep the Confidential Information confidential, and except as otherwise permitted herein, . . . not disclose the Confidential Information, in whole or in part, to a third party without the prior written consent (email being sufficient) of Juniper or SGCE in each instance, which consent may be withheld in the Discloser's sole discretion." *See* Form NDA at ¶¶ 2, 7.

5.      Concurrently herewith, APTIM has filed under seal the *Transmittal Declaration of Carl T. Tullson in Support of APTIM Maintenance, LLC's Supplemental Objection to Bidding*

---

[5]    These documents were not produced to APTIM in response to APTIM's discovery request.  Rather, Juniper had previously provided the documents to APTIM in connection with the pending arbitration proceeding. Notwithstanding that Juniper stamped "408" on the first page of the DIP lender marketing materials, these materials (1) do not reflect settlement communications with APTIM, (2) were not produced by the Debtors in response to APTIM's discovery request, and (3) are relevant and admissible.  *See Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 300 n.57 (5th Cir. 2010) (quoting FRE 408 advisory committee's note in paragraph 24 that Rule 408 "cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations").

*Procedures Motion* (the "Declaration"), which attaches (1) copies of various proposals made by the Debtors to APTIM in connection with APTIM's proposed credit bid and (2) a copy of Form NDA.[6]   In addition, APTIM has filed under seal *APTIM Maintenance, LLC's Witness and Exhibit List for Hearing on Debtors' Continued First-Day Hearing on July 6, 2020 at 3:00 pm (CST)* (Docket No. 59) (the "Exhibit List"), which includes numerous examples from the Debtors' own books and records reflecting Juniper's liability on the APTIM Claim in the full or near full liquidated amount, which documents were produced in response to APTIM's discovery requests.

6.       As of the filing of this Objection, the Debtors have failed to respond to APTIM's Omnibus Objection and have failed to incorporate any of APTIM's proposed changes to the Bidding Procedures.[7]   Taken together, these tactics evince the precise course of conduct against which APTIM cautioned in the Omnibus Objection.

7.       Accordingly, APTIM continues to have serious concerns with the proposed Bidding Procedures that the Debtors have not attempted to address.   As an initial matter and as

---

[6]    Because the Declaration and the Exhibit List (defined below) contain information that may be germane to the sales process, APTIM has moved this Court to file the Declaration and Exhibit List under seal. Ordinarily, given the nature of these communications, APTIM would not move to admit certain of these communications into the record; however, APTIM believes that these communications are clear indicia of the Debtors' lack of good faith in negotiating the proposed amount of the credit bid with APTIM and seeks to offer them for that purpose. While FRE 408 precludes evidence of a settlement offer "to prove or disprove the validity or amount of a disputed claim," it specifically provides that "[t]he court may admit this evidence for another purpose." Fed. R. Evid. 408(a), (b); *see also Evans v. Troutman*, 817 F.2d 104, 1987 WL 37221 at *3 (6th Cir. 1987) (Rule 408 does not require exclusion when the evidence of an offer to compromise is offered for a purpose other than to prove "liability for or invalidity of the claim or its amount" (citation omitted)); *Sandy Alexander, Inc. v. Manroland, Inc.*, No. 19 C 2461, 2020 WL 902891, at *6 (N.D. Ill. Feb. 25, 2020) (holding that proving bad faith would constitute "another purpose" under FRE 408, citing prior cases holding that "evidence of unreasonably low settlement offers is admissible to show bad faith") (quoting *Jordan Mozer & Assocs., Ltd. v. Gen. Cas. Co. of Wis.*, No. 14 CV 10264, 2017 WL 4281056, at *3 (N.D. Ill. Sept. 27, 2017))); *Montano v. Knox County.*, No. 3:14-cv-404-PLR-CCS, 2016 WL 1192673, at *3 (E.D. Tenn. Mar. 28, 2016) (noting that "federal courts are in agreement that evidence of settlement negotiations is admissible, and proper for the court's consideration" when offered for a purpose other than to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction).

[7]    In addition, the Debtors have not filed a declaration for Matthew Hart, the Debtors' proposed investment banker and a party identified by the Debtors as a witness in support of the Bidding Procedures Motion.

discussed above, the Debtors have failed to make a sufficient evidentiary record available to the Court and to parties in interest to support their requested relief.  In particular, to date the Debtors have failed to show how their proposed Bidding Procedures are consistent with good business judgment and supported by sound business reasons. *See Cadle Co. v. Mims* (In re Moore), 608 F.3d 253, 263 (5th Cir. 2010).

8.      Moreover, despite this Court's clear instruction, the Debtors have utterly failed to preserve in the proposed Bidding Procedures the rights of secured creditors to credit bid—a legitimate problem, which this Court already acknowledged. *See also In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989).  Here, the Debtors' business reasons for their proposed Bidding Procedures and timeline are, by their own admission, the Debtors' desire to pursue a transaction on a timeline that avoids administrative expenses and foists the Debtors' insurance obligations onto a potential buyer.

9.      Far from preserving or enhancing the value of the Debtors' assets, the Debtors' pursuit of these goals is likely to create extreme uncertainty among potential bidders, and to force potential bidders to conduct extensive diligence on complex assets on an unnecessarily compressed timeline.  This is almost certain to encourage any potential buyers to either avoid the Debtors' sale process altogether or to apply a steep risk discount to their purchase price.[8]  For these reasons, and the reasons set forth in the Omnibus Objection, APTIM respectfully requests that this Court deny the Debtors' Bidding Procedures Motion.

10.      However, if the Court is to approve the Bidding Procedures Motion, for the reasons set forth herein and in the Omnibus Objection, APTIM requests that the changes

---

[8]    The fact that the Debtors appear to be incapable of or unwilling to design a value-maximizing sale process or even consider the possibility of a rehabilitation or reorganization of their business is a critical reason why APTIM believes that the administration of the Debtors' estates is properly done through Chapter 7 and not Chapter 11.

proposed to the Bidding Procedures that APTIM attached as Exhibit A to the Omnibus Objection

(the "Proposed Changes") must be made.

11.     Finally, if the Court is to approve the Bidding Procedures without a reasonable

settlement as to amount that APTIM is permitted to credit bid, APTIM requests that the Court

should also enter an order setting forth a schedule (a "Scheduling Order") governing the

deadlines for determining the allowed amount of APTIM's claim.[9]   APTIM submits that the

Scheduling Order should contemplate the following timeline and procedures:

- All discovery with respect to allowance of the APTIM Claim must be completed on or before **July 15, 2020**.

- Any objection (a "Claim Objection") by the Debtors or any of their affiliates to the APTIM Claim must be filed on or prior to **July 17, 2020 at 4:00 p.m. Central Time**, and such Claim Objection shall disclose all information and provide copies of all documents on which the objector intends to rely in support of its Claim Objection.  If the objector relies on exhibits, the objector shall include such exhibits in its Claim Objection.  The objector shall include a certificate of counsel or a declaration or affidavit authenticating any documents attached to the Claim Objection, as appropriate.  The Claim Objection shall not exceed 20 single-sided, double-spaced pages (exclusive of exhibits or affidavits).

- To the extent a Claim Objection is timely filed, the objection to such Claim asserted in the claims objection (a "Contested Claim") shall be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.

- If the amount in dispute for a Contested Claim exceeds $1,000,000, the Debtors and APTIM shall hold a telephonic meet and confer (the "Meet and Confer") **within three (3) Business Days** of service of the Claim Objection.  The following representatives of each of the Debtors and APTIM shall attend the Meet and Confer: (A) counsel for each of the parties, and (B) a person possessing ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of the Debtors and APTIM, respectively.  The Court will consider appropriate sanctions, including allowance or disallowance of the Contested Claim, if either

---

[9]     APTIM's filed proof of claim supersedes any scheduled amount by the Debtors, *see* Bankruptcy Rule 3003(c)(4), and constitutes "*prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f).  Accordingly, a claim, proof of which has been filed under section 501 of the Bankruptcy Code, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a); *see also* 4 COLLIER ON BANKRUPTCY, ¶ 502.02[1].  It is black-letter law that "[u]nless an objector introduces evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." *Id.* at ¶ 502.02[3][e].  If Juniper objects to the APTIM Claim, Juniper "carries the burden of going forward with evidence concerning the validity and amount of the claim." *Id.*

party does not follow the foregoing procedures or conduct the Meet and Confer in good faith.

- APTIM's reply (the "Reply") to any Claim Objection must be filed on or prior to **July 24, 2020 at 4:00 p.m. Central Time**.  The reply shall not exceed 20 single-sided, double-spaced pages (exclusive of exhibits or affidavits).

- An evidentiary hearing to consider the validity and amount of any Contested Claim must conclude on or prior to **July 28, 2020**, or such later date as the Court is available, provided that in any event adjudication of the Contested Claim shall occur prior to the Bid Deadline set forth in the proposed Bidding Procedures.

The proposed timeline provides ample time for the parties to resolve any dispute as to the validity and amount of the APTIM Claim in advance of the Debtors' proposed bid deadline of July 31, 2020.  APTIM has suggested this Scheduling Order construct to the Debtors.

### REQUESTED RELIEF

12.     For these reasons, APTIM respectfully requests that this Court either (a) deny the relief requested in the Bidding Procedures Motion or (b) grant the relief requested in the Bidding Procedures Motion, subject to the Proposed Changes and entry of the Scheduling Order.

### RESERVATION OF RIGHTS

13.     APTIM expressly reserves all rights, claims, arguments, defenses and remedies with respect to the relief requested at the first-day hearing, and further reserves its right to supplement, modify and amend this Objection, to seek discovery, and to raise additional objections and arguments in writing or orally at the hearing.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, APTIM respectfully requests that the Court (i) sustain this Objection and the Omnibus Objection and (ii) grant such other and further relief as may be just and proper.

Dated:  July 3, 2020

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Rick M. Shelby*
Patrick "Rick" M. Shelby (La. Bar No. 31963)
Danielle Mashburn-Myrick
(*Admitted pro hac vice*)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
rick.shelby@phelps.com
danielle.mashburn-myrick@phelps.com

-and-

Ron E. Meisler
(*Admitted pro hac vice*)
Carl T. Tullson
(*Admitted pro hac vice*)
Amy Van Gelder
(*Admitted pro hac vice*)
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Facsimile:  (302) 651-3001
Email:Carl.Tullson@skadden.com

**COUNSEL FOR APTIM MAINTENANCE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2020, a true and correct copy of the foregoing Objection was served electronically via the Court's CMECF system.

/s/ Rick M. Shelby

1074489-CHISR01A - MSW